UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAVIER SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 4691 |
| | ) | |
| SERGEANT RONAN, Star No. 2040, | ) | Judge Leinenweber |
| P.O. MICHAEL TEWS, Star No. 10773, | ) | |
| P.O. G. MOUSSA, Star No. 5509, | ) | Mag. Judge Finnegan |
| KEN SAHNAS Star No. 331, P.O. NOEL | ) | |
| LIBOY, Star No. 13447, P.O. M.K. DROZD, | ) | |
| Star No. 19034, P.O. A.A. COLINDRES, | ) | |
| Star No. 19764, P.O. T.A. SURMA, | ) | |
| Star No. 7993, D.M. DOWD, Star No. 789, and | ) | |
| the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Sean Ronan, Michael Tews, George Moussa, Ken Sahnas, Donna Dowd, and the City of Chicago, by and through their attorneys, Christopher A. Wallace and Anne K. Preston, Assistants Corporation Counsel, hereby submit the following memorandum of law in support of their motion for summary judgment, and state as follows:

**STATEMENT OF THE CASE**

On July 27, 2010, Plaintiff, Javier Santiago, filed a three count complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. The lawsuit relates to a July 27, 2008, arrest. Count I alleges several Fourth Amendment claims including false arrest, unlawful search of person, unlawful search of a vehicle, and excessive force against Defendants Ronan, Tews, Moussa, Sahnas, and Dowd. Count II alleges a Section 1983 claim for conspiracy to violate Plaintiff's Fourth Amendment rights against Defendants Ronan, Tews, Moussa, Sahnas, Dowd, Liboy, Drozd,

1

Colindres, and Surma.[1] Count III alleges an indemnity claim against Defendant City of Chicago pursuant to 745 ILCS 10/9-102. Defendants now move for summary judgment on Plaintiff's false arrest, unlawful search of person, unlawful search of a vehicle, and conspiracy claims. Defendants also move for partial summary judgment on Plaintiff's excessive force claim.

## STATEMENT OF FACTS

On July 27, 2008, a citizen ("the informant") came into the 013th district police station and reported to Sgt. Maher, who was working the desk, that Plaintiff had threatened him with a gun. *See* Defendants' Local Rule 56.1(a)(3) Statement of Uncontested Facts in Support of Their Motion for Summary Judgment ("Def. 56.1 ¶__") ¶¶ 7 & 8, filed on December 15, 2011. The informant told Sgt. Maher that Plaintiff's nickname was "Bear," and that he had a gun inside his black Jetta which was located near the intersection of Damen and Rice. Def. 56.1 ¶¶ 8, 11 & 12. The informant spent approximately 1 to 1 ½ hours with Sgt. Maher providing her information about Plaintiff. Def. 56.1 ¶ 10. Sgt. Maher was able to pull up a photograph of Plaintiff who the informant verified was the man who had threatened him with a gun. Def. 56.1 ¶15. Sgt. Maher was informed the gun was in the vehicle and she believed the informant to be credible. Def. 56.1 ¶¶ 12 & 14.

Sgt. Maher then contacted Sgt. Ronan and relayed the information gathered from her interaction with the informant. Def. 56.1 ¶ 16. Sgt. Ronan proceeded to the area where the vehicle was reportedly located and found Plaintiff's vehicle parked near the intersection of Damen and Rice. Def. 56.1 ¶¶ 24 & 25. Sgt. Ronan then began to watch the vehicle to see if Santiago would show up to the car. Def. 56.1 ¶¶ 25 & 29. In addition, Sgt. Ronan contacted Officers Tews and Moussa who learned from Sgt. Ronan that the informant had come into the 013th district police station and reported that Santiago had a gun in his car. Def. 56.1 ¶ 27.

When they arrived in the area, Officer Tews and Officer Moussa ran Plaintiff's name and

---

[1] Plaintiff has voluntarily dismissed with prejudice all of his claims against Defendant Officers Liboy, Colindres, Surma, and Drozd. *See* Stipulation of Dismissal, Docket Entry No. 20.

license plate in their computer and learned that Plaintiff did not have a valid driver's license, was on parole for an armed robbery conviction, and that there was a safety alert/caution warning due to Santiago's criminal history and his being a gang member. Def. 56.1 ¶ 30.

While conducting surveillance, Sgt. Ronan saw Plaintiff get into the Jetta and throw a cigarette wrapper out of the window; Sgt. Ronan relayed this information to Officers Tews and Moussa. Def. 56.1 ¶¶ 31 & 32. Subsequently, Officers Tews and Moussa conducted a traffic stop of Plaintiff's vehicle. Def. 56.1 ¶ 37. Prior to stopping Plaintiff, Officer Tews and Officer Moussa knew Plaintiff did not have a valid driver's license and that Plaintiff was on parole for armed robbery. Def. 56.1 ¶ 38. In addition, Officers Tews and Moussa had been told by Sgt. Ronan that Plaintiff had littered from the vehicle and had proceeded to drive down the street. Def. 56.1 ¶ 32. Further, the officers had been informed by Sgt. Ronan that an informant in the 013th district police station had reported that Santiago had a gun in his car. Def. 56.1 ¶ 27.

Plaintiff was stopped and placed into custody for littering and operating a motor vehicle without a driver's license. Def. 56.1 ¶¶ 37 & 38. Officer Tews searched Plaintiff's vehicle and found a gun underneath the center console. Def. 56.1 ¶¶ 43 & 44. Plaintiff denies he had a gun, instead he claims it was planted on him because he was a convicted felon on parole. Def. 56.1 ¶¶ 45 & 46. Plaintiff, however, admits he littered from his vehicle. Def. 56.1 ¶ 33. Plaintiff also admits he did not have a valid driver's license and did not have car insurance. Def. 56.1 ¶¶ 34 & 35. Plaintiff concedes he should not have been driving. Def. 56.1 ¶ 36. Plaintiff was transported to the 13th district station for processing. Def. 56.1 ¶ 51. Lt. Ken Sahnas did not arrest Plaintiff, and did not interact with Plaintiff at any point. Def. 56.1 ¶ 61. Lt. Donna Dowd did not arrest Plaintiff, did not witness him being arrested, and did not interact with Plaintiff at any point. Def. 56.1 ¶ 63. Lt. Sahnas and Lt. Dowd's only role in Plaintiff's arrest was ministerial; they reviewed the arrest report signed in the appropriate sections to signify that the report was prepared properly. Def. 56.1 ¶¶ 58,

3

60, 65 & 66. Plaintiff does not know why he is suing a female police officer and does not have any complaints against any female police officers. Def. 56.1 ¶¶ 69 & 70.

## STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Once a motion for summary judgment has been made and properly supported, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *cert. denied*, 484 U.S. 1066 (1988). "Merely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989).

While "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party," *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158 (1980), only reasonable inferences, and not all conceivable inferences, will be drawn. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)(summary judgment is appropriate where the evidence supporting the nonmovant "is merely colorable or is not significantly probative"). Even the "existence of a factual dispute will not bar summary judgment unless 'the disputed fact is outcome determinative under governing law.'" *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987) (citation omitted).

## ARGUMENT

**I. PLAINTIFF'S FALSE ARREST CLAIM MUST FAIL BECAUSE DEFENDANTS TEWS, MOUSSA, AND RONAN HAD PROBABLE CAUSE TO ARREST PLAINTIFF FOR TRAFFIC VIOLATIONS AND LITTERING.**

Plaintiff cannot prevail on his false arrest claim against Defendants Tews, Moussa, and Ronan. Probable cause to arrest is an <u>absolute</u> <u>bar</u> to a Section 1983 claim for false arrest. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (emphasis added); *Fernandez v. Perez*, 937

F.2d 368, 370 (7th Cir. 1991). Courts determine whether probable cause exists under the objective reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 388 (1989). Probable cause exists "[s]o long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part." *U.S. v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001)(citation omitted). "In recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard.'" *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (emphasis in original) (citations omitted).

The temporary detention of an individual during a traffic stop by police constitutes a seizure under the Fourth Amendment. *Whren v. U.S.,* 517 U.S. 806, 809 (1996). Therefore, the stop must be reasonable under the circumstances. *Id.* at 810. In order to seize a person, police officers need probable cause. *Id.* In a traffic stop situation, probable cause exists when an officer reasonably believes that the driver committed a traffic violation. *Id.* The officer's subjective intentions "play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813.

In the instant case, Officers Tews and Moussa had probable cause to conduct a traffic stop because they observed Plaintiff driving a motor vehicle and they knew that Plaintiff did not have a valid driver's license. Def. 56.1 ¶¶ 37 & 38. Moreover, Sgt. Ronan had informed Officers Tews and Moussa previously that Plaintiff had littered from his vehicle. Def. 56.1 ¶ 32. Arresting officers may rely upon accounts of fellow law enforcement personnel to establish probable cause. *See Spiegel v. Cortese,* 196 F.3d 717, 726 (7th Cir. 1999); *see also United States v. Ellis,* 499 F.3d 686, 690 (7th Cir. 2007); *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006). In addition to the undiputed fact that Plaintiff had committed the aforementioned traffic crimes, Officers Tews and Moussa were also entitled to rely upon the information relayed to them that a citizen informant claimed that Plaintiff

5

had a gun inside his vehicle. Def. 56.1 ¶¶ 27, 38. Probable cause may be founded upon a complaining witness that may not turn out to have been truthful. *See, e.g., Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (stating "[p]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters.") Therefore, the initial traffic stop did not violate Plaintiff's Fourth Amendment rights because the stop was clearly supported by probable cause.

Because it is undisputed that Plaintiff littered from his vehicle and was driving without a driver's license on July 27, 2008, Plaintiff's fourth amendment false arrest claim fails as a matter of law. Def. 56.1 ¶¶ 32-38. In sum, the undisputed facts establish probable cause to arrest Plaintiff on July 27, 2008. Plaintiff admits that he littered from his vehicle, that he was operating his vehicle without a driver's license or insurance, and that he should not have been driving at all. Def. 56.1 ¶¶ 33-36. It is undisputed that Officers Tews and Moussa knew that Plaintiff did not have a valid driver's license and had littered from his vehicle before stopping him. Def. 56.1 ¶¶ 32, 37 & 38. It is well-established that an individual may be arrested for a minor criminal offense, even if it is only punishable by a fine. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that the arrest of plaintiff for a minor traffic violation, specifically failure to wear a seatbelt while operating an automobile, did not violate the Fourth Amendment). Under Illinois law, "[n]o person…shall drive any motor vehicle upon a highway in this State unless such person has a valid license or permit…" 625 ILCS 5/6-101(a) (2002). Thus, the officers had probable cause to arrest Plaintiff for violation of section 5/601. In addition, under Illinois law, "[n]o person shall . . . throw . . . litter from any motor vehicle upon any public highway . . ." 415 ILCS 105/5 (2002).

It is well-established that a custodial arrest for even a minor traffic violation does not violate the Fourth Amendment. *Atwater,* 532 U.S. at 354. The Supreme Court has held that there is no constitutional violation as long as there is probable cause to arrest for any violation of law, even a

6

violation that is not closely related to the offense for which Plaintiff was charged. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Once officers have probable cause to arrest a defendant, "it is irrelevant their investigation eventually found evidence of other crimes. . ."; the issue is whether a reasonable officer would have had probable cause to arrest a defendant for any offense. *United States v. Williams*, 495 F.3d 810, 817-18 (7th Cir. 2007).

To the extent Plaintiff claims his person was unlawfully searched, Police officers may search a suspect's person incident to arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973). Since Officers Tews, Moussa, and Ronan lawfully arrested Plaintiff, they were entitled to search his person. *Id.* Because Defendant Officers had probable cause to arrest Plaintiff, his false arrest and unlawful search of his person claims against Officers Tews, Ronan, and Moussa must fail.

**II.  SUMMARY JUDGMENT MUST BE GRANTED IN FAVOR OF DEFENDANTS TEWS, MOUSSA, AND RONAN ON PLAINTIFF'S UNLAWFUL SEARCH OF VEHICLE CLAIM BECAUSE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Qualified immunity shields Defendants Tews, Moussa, and Ronan from any liability for Plaintiff's Section 1983 unlawful search of vehicle claim for several reasons. The issue of qualified immunity is a question of law for the court to decide. *Alvarado v. Picur*, 859 F.2d 448, 450 (7th Cir. 1988). Under the doctrine of qualified immunity, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity protects government actors from liability for civil damages where their actions have not violated "clearly established" rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). In analyzing whether a right is clearly established, courts look to the law as it existed at the time of the alleged misconduct and compare the undisputed facts to other cases which define the parameters of the constitutional right at issue. *See Brosseau v. Haugen*, 543 U.S. 194, 199-

7

200 (2004). Although qualified immunity is a defense to a Section 1983 suit, plaintiff bears the burden of establishing the elements of the two part test. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). To overcome qualified immunity, a plaintiff must show (1) a constitutional violation occurred and (2) the right at issue was clearly established at the time of the defendants' actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts employ a two-fold analysis. First, the court must determine whether the alleged conduct sets forth a constitutional violation. Second, the court examines whether the constitutional standards were clearly established at the time of the violation. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). It is up to the court to determine the order of decision making that "will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 129 S.Ct. 808, 822 (2009).

Applying the first prong of the qualified immunity analysis to Plaintiff's unlawful search claim shows that Plaintiff has not established the violation of any constitutional right. Officers Tews, Moussa, and Ronan had probable cause to arrest Plaintiff for littering, and operating a motor vehicle without a driver's license or insurance. *See* discussion *supra* § I. Additionally, Plaintiff was under lawful custodial arrest at the time Plaintiff's vehicle was searched. *See* discussion *supra* § I. On the date of this incident, July 27, 2008, it was not clearly established that police officers were prohibited from conducting a search of a vehicle incident to an arrest. *See New York v. Belton*, 453 U.S. 454, 460 (1981). *Belton* had been widely understood by law enforcement to authorize a vehicle search incident to a custodial arrest. *Arizona v. Gant*, 129 S.Ct. 1710, 1718-1719 ("Indeed, some courts have upheld searches under *Belton* 'even when… the handcuffed arrestee has already left the scene.'"). The *Gant* decision, issued on April 21, 2009, almost nine months after Plaintiff's arrest, narrowed this interpretation of *Belton*. Under *Gant*, police may search a vehicle passenger compartment incident to an occupant's arrest only if there is reason to believe that the arrestee

8

might access the vehicle at the time of the search or if the officer believes that the vehicle contains evidence of the offense. *Arizona v. Gant*, 127 S.Ct. 1710 (2009).

Over a year after Plaintiff's July 27, 2008 arrest, an Illinois appellate court case has applied *Gant* to prohibit searches of vehicles based on any statute or police procedure which authorizes the search and inventory of vehicles subject to tow. *People v. Clark*, 2009 WL 2855858 (Ill.App. 1st Dist. September 3, 2009). In *Clark*, the Illinois appellate court suppressed an officer's recovery of narcotics from a vehicle after the operator had been subject to custodial arrest. The court held that a statute or procedures allowing local police authorities to inventory abandoned or other vehicles subject to tow did not permit a warrantless search of the vehicle. *Id.*

In the instant case, Plaintiff was lawfully arrested. Plaintiff did not have a driver's license. It is undisputed that Plaintiff littered from his vehicle in violation of 415 ILCS 105/5. Thus, to the extent Plaintiff claims the search of the vehicle, on July 27, 2008, violated his Fourth Amendment rights, it was well-established that officers could conduct an inventory search of a vehicle in their custody. *United States v. Jensen*, 169 F.3d 1044, 1048 (7th Cir. 1999) ("[w]arrantless inventory searches of cars in police custody are … proper as long as the police lawfully have custody of the vehicles."); *see also United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006); *United States v. Wimbush*, 337 F.3d 947, 950-51 (7th Cir. 2003). Here, it is clear that the officers had lawful custody of the vehicle. Plaintiff did not have a valid driver's license. Def. 56.1 ¶¶ 34, 38. Plaintiff was in custody for littering and driving without a valid driver's license. Def. 56.1 ¶¶ 37-38, 47-49. Plaintiff's vehicle was going to be impounded. Def. 56.1 ¶¶ 47-49. Chicago Police Department procedures subjected Plaintiff's vehicle to inventory and to be searched. Def. 56.1 ¶¶ 47-49.

In the alternative, Defendants had probable cause to search Plaintiff's vehicle based upon the information provided by the informant. The Seventh Circuit held that officers may search a vehicle if they have probable cause to believe that evidence of criminal activity is inside that vehicle.

9

*Ochana v. Flores*, 347 F.3d 266, 270-271 (7th Cir. 2003). In this case, Officers Tews, Moussa, and Ronan had ample probable cause to search Plaintiff's vehicle based upon the citizen's report to Sgt. Maher that Plaintiff had a gun inside his car. Therefore, the vehicle search was proper.

Because the law was not clearly established that the Defendants should have known that the search of Plaintiff's vehicle under these circumstances was not permissible under the Fourth Amendment, Defendants are entitled to qualified immunity for the Plaintiff's illegal search of vehicle claim in Count I.

In conclusion, Officers Tews, Moussa, and Ronan could have reasonably believed that searching Plaintiff's vehicle was lawful based on the widespread understanding of the *Belton* decision and Illinois law. Under these facts and circumstances, Officers Tews, Moussa, and Ronan are entitled to qualified immunity as to Plaintiff's Section 1983 unlawful search of vehicle claim. Consequently, summary judgment is proper.

### III. TO THE EXTENT THAT PLAINTIFF IS ALLEGING THAT HE WAS MALICIOUSLY PROSECUTED, THIS CLAIM MUST FAIL BECAUSE THERE IS NO FEDERAL MALICIOUS PROSECUTION CLAIM.

To the extent Plaintiff alleges Defendants planted a gun on him and fabricated police reports in an effort to maliciously prosecute him, his claim fails as a matter of law. It is well established that there is no federal claim for malicious prosecution. *See, e.g.*, *Ray v. City of Chicago, et al.*, 629 F.3d 660, 664 (7th Cir. 2011). A claim for wrongful or malicious prosecution is not a cause of action under § 1983 and the Seventh Circuit has soundly eliminated this claim as a constitutional tort. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (no Fourteenth Amendment malicious prosecution claim); *see also McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (same). In *McCann*, the Seventh Circuit made it clear that plaintiffs cannot "do an end run around [Newsome]" by recasting claims for malicious prosecution and/or false arrest into constitutional principles. *Id.* at 786. In short, there simply is no constitutional right not to be prosecuted. *See Newsome*, 256 F.3d at 750

(citing Albright *v. Oliver*, 510 U.S. 266 (1994)). For these reasons, Defendants are entitled to summary judgment as to any claim Plaintiff was maliciously prosecuted.

IV. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM TO THE EXTENT THEY WERE NOT PERSONNALY INVOLVED IN THE COMPLAINED OF CONDUCT.**

   A. **Defendants Tews, Moussa, Ronan, Sahnas, and Dowd are not liable for Plaintiff's alleged tasering.**

Defendants Tews, Moussa, Ronan, Sahnas, and Dowd are entitled to summary judgment as to Plaintiff's claim that he was tased. In a civil rights action, plaintiff must prove that the defendant personally participated in, or caused the unconstitutional actions. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). Liability under 42 U.S.C. § 1983 must be predicated upon an individual defendant's personal involvement in the alleged misconduct. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Schultz v. Baumgart,* 738 F.2d 231, 238 (7th Cir. 1984); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1984). Plaintiff alleges that an officer tased him at the 13th district police station. Def. 56.1 ¶¶ 52-53. However, Plaintiff admits that he was not tased by Officer Tews, Moussa, or Ronan. Def. 56.1 ¶ 54. Moreover, Plaintiff admits that Officers Tews, Moussa, and Ronan were not present when he was allegedly tased. Def. 56.1 ¶ 54. Similarly, Plaintiff never had any contact with Lt. Sahnas or Lt. Dowd. Def. 56.1 ¶¶ 61, 64. Lt. Dowd did not even work at the 13th district police station. Def. 56.1 ¶ 62.

Because Defendants were not personally involved in the alleged tasering and were not present for it, summary judgment should be entered in favor of Defendants Tews, Moussa, Ronan, Sahnas, and Dowd as to Plaintiff's excessive force claim as it relates to any allegation that he was tased.

   B. **Defendants Dowd, Sahnas, Moussa, and Ronan are not liable for any claim for excessive force because they did not have physical contact with him.**

11

In addition to being entitled to summary judgment on the basis of Plaintiff's allegation he was tased, Defendants Dowd, Sahnas, Moussa, and Ronan are entitled to summary judgment as to any remaining claim by Plaintiff for excessive force claim because they did not have any physical contact with Plaintiff.[2] Though Plaintiff alleged in his complaint that he was slapped by Officer Moussa (*see* Pl. Complaint, dockent entry no. 1, ¶ 9), Plaintiff testified under oath in his deposition that Officer Moussa never hit or struck him. Def. 56.1 ¶ 55. In fact, Officer Moussa did not have any physical contact with Plaintiff. Def. 56.1 ¶ 55. The record is devoid of any evidence that Sgt. Ronan, Lt. Sahnas, or Lt. Dowd had any physical contact with Plaintiff. Def. 56.1 ¶¶ 54-56. Therefore, summary judgment should be granted in favor of Defendants Moussa, Ronan, Sahnas, and Dowd as to any claim by Plaintiff that he was subjected to excessive force because they were not personally involved in any alleged misconduct. *Wolf-Lillie,* 699 F.2d at 869; *Schultz,* 738 F.2d at 238; *Rascon*, 803 F.2d at 273.

## V. DEFENDANTS SAHNAS AND DOWD ARE ENTITLED TO SUMMARY JUDGMENT AS TO ALL CLAIMS AGAINST THEM.

Plaintiff cannot prevail as a matter of law as to any claims against Lt. Sahans or Lt. Dowd because they had no personal involvement in his arrest and never had any interaction or contact with Plaintiff. In a civil rights action, plaintiff must prove that the defendant personally participated in, or caused the unconstitutional actions. *Duncan,* 644 F.2d at 655; *Alejo,* 328 F.3d at 936. Liability under 42 U.S.C. § 1983 must be predicated upon an individual defendant's personal involvement in the alleged misconduct. *Wolf-Lillie*, 699 F.2d at 869; *Schultz,* 738 F.2d at 238; *Rascon,* 803 F.2d at 273. It is undisputed that Lt. Sahnas and Lt. Dowd did not arrest Plaintiff, were not present for Plaintiff's arrest, and never had any interaction with Plaintiff. Def. 56.1 ¶¶ 61, 63. Lt. Sahnas and Lt. Dowd's

---

[2] Defendants are not moving for summary judgment on Plaintiff's excessive force claim against Officer Michael Tews to the extent that Plaintiff claims Officer Tews pulled him out of his vehicle, slammed him on the car, and handcuffed him tightly because there is a factual dispute as to these allegations. Def. 56.1 ¶¶40 & 41.

12

only involvement was limited to performing ministerial functions upon review of Plaintiff's arrest report. Def. 56.1 ¶¶ 57-67.

First, Lt. Sahnas, as part of his administrative responsibilities as the watch commander in the 013th district, executed the initial approval of probable cause portion of Plaintiff's arrest report. Def. 56.1 ¶ 58. In addition, Lt. Sahnas wrote comments in the watch commander comment section of the arrest report to document that a parole violation warrant was issued against Plaintiff, and, upon information and belief, populated the felony review portion of the arrest report. Def. 56.1 ¶ 59. The initial approval of probable cause and the watch commander comments are ministerial duties performed by a supervisor upon review of an arrest report and as part of the responsibilities of a watch commander. Def. 56.1 ¶ 60.

Lt. Dowd was the acting watch commander in the Fourteenth District police station. Def. 56.1 ¶ 62. She reviewed the arrest report and affixed her electronic signature on page five (5) adjacent to "Final Approval of Charges" portion of the report. Def. 56.1 ¶ 65-66. She executed the "Final Approval of Charges" portion because, as part of her administrative responsibilities as the acting watch commander on July 27-28, 2008, she must review completed arrest reports submitted and execute the final approval of charges portion. Def. 56.1 ¶ 65-66. The "final approval" executed by Lt. Dowd is a ministerial duty performed by the watch commander and merely signifies that the report submitted by the arresting officers sets forth sufficient information to satisfy the elements for the offense(s) listed. Def. 56.1 ¶ 67. Plaintiff does not have any complaints about anything that happened when he was held at the 14th district police station, has no complaints about any female police officers, is not aware that he is suing a female police officer, and does not know who Donna Dowd is. Def. 56.1 ¶ 68-69. According to Santiago, no female police officers mistreated him in any way in relation to his arrest. Def. 56.1 ¶ 70.

13

Because Lt. Sahnas and Lt. Dowd cannot be held liable for the actions of other officers, summary judgment should be granted in their favor as to all of Plaintiff's claims against them.

## VI. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CONSPIRACY CLAIM BECAUSE THERE IS NO UNDERLYING CONSTITUTIONAL VIOLATION.

Defendants are entitled to summary judgment on Plaintiff's conspiracy claim because there is no underlying constitutional violation. As set forth more fully above, Plaintiff cannot establish that he was falsely arrested, unlawfully searched or that his vehicle was unlawfully searched in violation of the Fourth Amendment. "[C]onspiracy is not an independent basis of liability in §1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Therefore, Plaintiff cannot prevail on his claim that Defendants conspired to violate his Fourth Amendment rights.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants respectfully request that this Honorable Court grant Defendants' motion for summary judgment and for such other relief as this Court deems just and appropriate.

Respectfully submitted,

Sergeant Ronan,
P.O. Michael Tews,
P.O. G. Moussa,
Ken Sahnas,
D.M. Dowd,
City of Chicago
Defendants

By: */s/ Anne K. Preston*
    Anne K. Preston
Attorney for Defendants
30 N. LaSalle St., Suite 900
Chicago, IL 60602
T: (312) 742-4045
Attorney No. 6287125

By: */s/ Christopher A. Wallace*
    Christopher A. Wallace
Assistant Corporation Counsel
*Attorney for Defendants*

City of Chicago Department of Law
30 N. LaSalle St.
Suite 900
Chicago, IL 60602

T: (312) 742-6408
F: (312) 744-6566
ARDC# 6278655

## **CERTIFICATE OF SERVICE**

    I, Christopher Wallace, certify that on December 15, 2011, I served a copy of Defendants' Memorandum in Support of Their Motion for Summary Judgment upon all counsel of record by filing the same before the Court via the ECF system.

*/s/ Christopher Wallace*
Christopher Wallace