IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAVIER SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 4691 |
| | ) | |
| SERGEANT RONAN, Star No. 2040, | ) | Judge Leinenweber |
| P.O. MICHAEL TEWS, Star No. 10773, | ) | |
| P.O. G. MOUSSA, Star No. 5509, | ) | Mag. Judge Finnegan |
| KEN SAHNAS Star No. 331, P.O. NOEL | ) | |
| LIBOY, Star No. 13447, P.O. M.K. DROZD, | ) | |
| Star No. 19034, P.O. A.A. COLINDRES, | ) | |
| Star No. 19764, P.O. T.A. SURMA, | ) | |
| Star No. 7993, D.M. DOWD, Star No. 789, and | ) | |
| the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT RULE 56.1 STATEMENT[1]

Defendant City of Chicago and Defendants Sergeant Sean Ronan ("Sgt. Ronan"), P.O. Michael Tews ("Officer Tews"), P.O. G. Moussa ("Officer Moussa"), Ken Sahnas ("Lt. Sahnas"), and D.M. Dowd ("Lt. Dowd")(collectively referred to herein as the "Individual Defendants"), by and through one of their attorneys, Christopher A. Wallace, Assistant Corporation Counsel of the City of Chicago, submit the following statement of material undisputed facts pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## JURIDICTION & VENUE

1.  Jurisdiction is proper as Plaintiff, Javier Santiago, in his Complaint, brings claims pursuant to 42 U.S.C. § 1983 to seek redress for alleged violations of his constitutional rights. (Defs' Joint Ans. to Pl. Complt., hereinafter referred to as "Defs.' Ans."), Docket Entry No. 6, ¶¶ 1-2).

---

[1] Officers Liboy, Drozd, Colindres and Surma have been voluntarily dismissed from this case. *See* Stipulation to Dismiss, docket entry 20.

2. Venue is proper as Santiago was arrested on July 27, 2008, in Chicago, IL. (Defs.' Ans. ¶ 3)

## PARTIES

3. The Individual Defendants were at all times relevant to this case acting under color of law and in the course and scope of their employment as police officers for the Chicago Police Department. (Defs.' Ans. ¶ 5).

4. The City of Chicago is a municipal corporation and at all relevant times employed the Individual Defendants as police officers. (Defs.' Ans. ¶ 6).

5. Javier Santiago is a convicted felon who was arrested on July 27, 2008, at approximately 3:45 p.m. (Excerpts from the deposition of Javier Santiago (hereinafter "Santiago Dep."), attached hereto as Ex. A, 68:18-19, 73:14-18; Arrest Report of Javier Santiago, attached hereto as Ex. B).

6. Following his July 27, 2008, arrest, Santiago was charged with the following offenses: (1) Unlawful use or possession of weapons by felon, violating 720 ILCS 5/24-1.1(a); (2) Aggravated unlawful use of weapons (no FOID), violating 720 ILCS 5/24-1.6(a)(3)(C); (3) Littering from a motor vehicle, violating 415 ILCS 105.0/5; (4) Driving without a valid driver's license, violating 625 ILCS 5.0/6-101; (5) Operating an uninsured vehicle, violating 625 ILCS 5.0/3-707; (6) Possession of a firearm with defaced serial number, violating 720 ILCS 5.0/24-5(b). (*See* Ex. B).

## THE REPORT OF PLAINTIFF POSSESING A GUN
## BY THE INFORMANT

7. On July 27, 2008, Sgt. Patricia Maher (hereinafter "Sgt. Maher") was working at the desk in the 013th district police station. (Excerpts from the deposition of Patricia Maher (hereinafter "Maher Dep."), 7:23 – 8:2, attached hereto as Ex. C).

8. During her shift a Hispanic male (hereinafter referred to as "the informant") came to the desk and reported to Sgt. Maher that Santiago, who he said also goes by the nickname "Bear",

2

had threatened him with a gun. (Ex. C, Maher Dep. 14:10 – 21:20, 23:23 – 27:2, 34:21 – 38:16, 46:20 – 49:6, 53:13 -56:2).

9. Santiago admits that his nickname is "Bear." (Ex. A, Santiago Dep. 13:3-14).

10. The informant spent approximately 1 to 1 ½ hours at the desk with Sgt. Maher providing information about Santiago. (Ex. C, Maher Dep. 14:10 – 21:20, 23:23 – 27:2, 34:21 – 38:16, 46:20 – 49:6, 53:13 -56:2).

11. The informant provided Sgt. Maher with a physical description of Santiago, male Hispanic with long black hair, a clothing description, black tank top, black shorts, a description of Santiago's car (a black Volkswagen Jetta with a license plate beginning X17), as well as where Santiago and the car were located (area of Damen and Rice). (Ex. C, Maher Dep. 14:10 – 21:20, 23:23 – 27:2, 34:21 – 38:16, 46:20 – 49:6, 53:13 -56:2).

12. The informant told Sgt. Maher the gun was in the car. (Ex. C, Maher Dep. 35:2 – 36:7).

13. The informant wished to remain anonymous and that his identity not be revealed because he feared Santiago. (Ex. C, Maher Dep. 20:8-13).

14. Sgt. Maher went into law enforcement databases to verify information provided by the informant and to identify Plaintiff Javier Santiago; Sgt. Maher believed the informant to be credible. (Ex. C, Maher Dep. 14:10 – 21:20, 23:23 – 27:2, 34:21 – 38:16, 46:20 – 49:6, 53:13 -56:2).

15. Sgt. Maher pulled up a photograph of Santiago and showed it to the informant who verified that Santiago was the individual who threatened him with a gun. (Ex. C, Maher Dep. 54:2-21).

16. Sgt. Maher contacted Sgt. Ronan and relayed the information reported by the informant and the information she obtained by accessing law enforcement databases. (Ex. C, Maher Dep. 46:20 – 48:6; Excepts from the deposition of Sean Ronan (hereinafter "Ronan Dep."), 14:9 –

3

15:14, attached hereto as Ex. D; Interrogatory Response of Sgt. Sean Ronan, (hereinafter "Ronan Rog. Resp."), no. 13, attached hereto as Ex. F).

17. Santiago is not aware that prior to being stopped by the police someone had come into the 013th district police station and told police he had a gun. (Ex. A, Santiago Dep. 137:5-24).

### **SERGEANT RONAN'S SURVEILLANCE OF PLAINTIFF**

18. On July 27, 2008, Sgt. Ronan was working as a gang team sergeant in the 013th police district. (Ex. D, Ronan Dep. 14:9 – 15:14; Ex. F, Ronan Rog. Resp. no. 9).

19. Sgt. Ronan received a call to contact the 013th district desk sergeant. (Ex. D, Ronan Dep. 14:9 – 15:14; Ex. F, Ronan Rog. Resp. no. 13).

20. From the desk sergeant, Sgt. Ronan learned a citizen (the informant) came to the station and reported that Santiago had a gun. (Ex. D, Ronan Dep. 14:9 – 15:14, 16:7-23; Ex. F, Ronan Rog. Resp. no. 13).

21. Sgt. Ronan received a description of Santiago's appearance, Santiago's vehicle, including the license plate number, where Santiago was, and where the vehicle was parked (area of Damen and Rice). (Ex. D, Ronan Dep. 14:9 – 15:14, 16:7-23; Ex. F, Ronan Rog. Resp. no. 13).

22. Santiago admits he was driving a black 4-door Volkswagen Jetta, license plate X176785, and that this was his car. (Ex. A, Santiago Dep. 101:21 – 102:24; 106:16-21).

23. Sgt. Ronan was informed that Santiago possessed a firearm in his vehicle. (Ex. D, Ronan Dep. 14:9 – 15:14, 16:7-23, 23:8-10, 55:2 – 56:11).

24. After receiving the information from Sgt. Maher, Sgt. Ronan proceeded to the area of Damen and Rice and located Santiago's vehicle (the Jetta). (Ex. D, Ronan Dep. 20:22 – 21:5, 47:9 – 48:2).

25. After locating Santiago's vehicle, Sgt. Ronan set up surveillance and contacted Officer Tews and Officer Moussa to bring them into the area to assist him. (Ex. D, Ronan Dep.

21:8-19, 22:22 – 23:7; Excerpts from the deposition of Michael Tews (hereinafter "Tews Dep."), 8:2 – 9:2, attached hereto as Ex. E).

26. Officer Tews and Officer Moussa had been watching a stolen car in another part of the district. (Ex. E, Tews Dep. 8:2 – 9:2, 9:17 – 10:5).

27. Sgt. Ronan called Officer Tews and informed him that a person had gone into the 013th district station and reported that Santiago had a gun in his car, that he had located the vehicle and that he was maintaining surveillance on it. (Ex. D, Ronan Dep. 22:22 – 23:7; Ex. E, Tews Dep. 8:2 – 9:2, 9:17 – 12:10).

28. Officer Tews and Officer Moussa relocated to the area and awaited further instruction. (Ex. E, Tews. Dep. 8:2 – 9:2, 9:17 – 10:21; Excerpts from the deposition of George Moussa (hereinafter "Moussa Dep."), 8:7 – 10:13, attached hereto as Ex. N).

29. Sgt. Ronan watched Santiago's vehicle until he observed Santiago, who matched the description given by the informant, appear on the street near the Jetta. (Ex. D, Ronan Dep. 25:7 – 28:21).

30. While awaiting information from Ronan, Officer Tews looked up information about Santiago on the in-car computer and saw a picture of Santiago, learned that Santiago did not have a valid driver's license, that was on parole for armed robbery, and that there was a safety/caution alert for Santiago due to his criminal history and gang membership. (Ex. E, Tews Dep. 11:22 – 12:10, 13:7 – 16:17, 28:4-12; Ex. N, Moussa Dep. 14:7 – 17:10).

31. After observing Santiago talking on his cell phone, Sgt. Ronan watched Santiago get into the Jetta, unwrap a cigarette pack and throw the cellophane wrapper out his window as he pulled into traffic and began driving down the street. (Ex. D, Ronan Dep. 25:7 – 28:21).

5

32. Upon seeing Santiago throw the wrapper out the window, Sgt. Ronan reported to Officer Tews and Officer Moussa that Santiago had just littered from the car. (Ex. D, Ronan Dep. 53:20 – 54:3, Ex. E, Tews Dep. 15:5 – 16:17; Ex. N, Moussa Dep. 18:4 -19:9).

33. Santiago admits that he tossed his cigarette wrapper out of his window as he began to drive. (Ex. A, Santiago Dep. 134:14 – 135:13).

34. Santiago admits he did not have a driver's license on July 27, 2008. (Ex. A, Santiago Dep. 137:5-24).

35. Santiago admits that he did not have car insurance on July 27, 2008. (Ex. A, Santiago Dep. 137:5-24).

36. Santiago admits that he should not have been driving on July 27, 2008. (Ex. A, Santiago Dep. 137:5-24).

## **OFFICERS TEWS AND MOUSSA STOP AND ARREST PLAINTIFF**

37. After learning that Santiago littered from the vehicle from Sgt. Ronan, Officer Tews and Officer Moussa conducted a traffic stop of Santiago's vehicle. (Ex. E, Tews Dep. 11:22 – 16:17; Ex. N, Moussa Dep. 19:13-16).

38. Prior to stopping Plaintiff, Officer Tews and Officer Moussa knew that Santiago had littered from his vehicle, that Santiago did not have a driver's license, that Santiago was on parole for armed robbery, that there was a caution/safety alert for Santiago due to his criminal history and gang membership, and that Santiago reportedly had a gun in the car. (Ex. E, Tews Dep. 11:22 – 16:17, 28:4-12; Ex. N, Moussa Dep. 9:14 – 10:13, 13:22 – 17:10, 18:4 – 19:16).

39. According to Plaintiff, he was stopped by "Officer Mike" and "Moose." (Ex. A, Santiago Dep. 138:21-24).

40. According to Plaintiff, Officer Mike came to the driver's side, grabbed Plaintiff and got him out of the vehicle. Officer Mike then slammed Plaintiff against the car, and handcuffed him. (Ex. A, Santiago Dep. 139:17-24, 140:1-15)

41. Plaintiff claims that he was handcuffed too tightly and that he complained about tight handcuffs more than twenty times, but that he received no response until Officer Mike loosened the handcuffs at the 13th district station after he had been handcuffed for less than 30 minutes. (Ex. A, Santiago Dep. 236:16-18; 237:2-22; 244:7-18)

42. Plaintiff was not thrown on the ground, punched, hit or struck. (Ex. A, Santiago Dep. 143:14-20)

**OFFICER TEWS SEARCHES PLAINTIFF'S AUTOMOBILE**

43. With Plaintiff Santiago in custody, Officer Tews searched the interior of Plaintiff's vehicle. (Ex. E, Tews Dep. 19:18 – 21:14; Ex. N, Moussa Dep. 33:3-24).

44. According to Officer Tews, the center console of the vehicle was loose because it was not bolted down. Officer Tews was able to lift the console up and, upon doing so, found a chrome small revolver. (Ex. E, Tews Dep. 19:18 – 21:14; Ex. N, Moussa Dep. 33:3-24).

45. Plaintiff denies there was a handgun in his vehicle and denies that any police officer found a handgun. (Ex. A, Santiago Dep. 141:10-15; 150:14-24).

46. Instead, Plaintiff claims the handgun was planted at the 013th district police station in order to send him back to prison because he was a convicted felon. (Ex. A, Santiago Dep. 175:4 – 177:18).

47. Santiago's vehicle was going to be impounded. (Ex. N, Moussa Dep. 31:9-13).

48. Santiago's car was searched on the scene of his arrest as soon as he was placed into custody for littering, no driver's license, and no insurance. (Ex. N, Moussa Dep. 31:15-21; Ex. E, Tews Dep. 18:5 – 21:4).

49. Santiago's car was searched, in part, because the vehicle was going to be impounded pursuant to the Chicago Police Department's policies and procedures for inventorying an automobile. (Ex. N, Moussa Dep. 31:9-17, 27:4-21).

50. In addition, Santiago's car was searched because the officers had received information that Plaintiff had a gun in the car. (Ex. E, Tews Dep. 18:5 – 21:4).

51. Santiago was transported from the scene of the arrest to the 013th district police station, a distance of a few blocks, by Officers Surma and Drozd, who had been driving by and stopped to assist the arresting officers as a courtesy. (Ex. E, Tews Dep. 18:5-24; Excerts from the Deposition of Officer Thomas Surma, 6:2-17, attached hereto as Ex. L; Excerpts from the Deposition of Officer Marek Drozd, 5:8-20, 8:20 – 9:6, attached hereto as Ex. M).

## SANTIAGO PROCESSED AT 013th DISTRICT STATION

52. According to Santiago, while in the 013th district police station, an officer, who was not present during Plaintiff's arrest, opened his cell door at the 13th district, and took his belt off. (Ex. A, Santiago Dep. 161:10-11; 163:3-17; 164:17-18). Plaintiff claims that two officers entered his cell; one of these officers was "talking crazy" and the other officer tasered Mr. Santiago. (Ex. A, Santiago Dep. 161:10-17)

53. According to Santiago, a Hispanic officer, who was six feet tall, weighed approximately 160 pounds, and had brown spiky hair is the officer who tasered him. (Ex. A, Santiago Dep. 164:21-24; 165:1-16)

54. Officer Moose, Officer Mike, and the sergeant did not tase Plaintiff and were not present when Plaintiff claims he was tased. (Ex. A, Santiago Dep. 187:14-24; 188:1-9)

55. Officer Moose, Officer Mike, and the sergeant never struck or punched Plaintiff. (Ex. A, Santiago Dep. 194:19-24; 195:1-15).

56. Plaintiff never saw the sergeant until he had been in the police station for four hours. (Ex. A, Santiago Dep. 142:13-21). Plaintiff had a conversation with the sergeant at the 13th district police station and never saw him again. (Ex. A, Santiago Dep. 178:17-24, 179:1-15).

## LT. SAHNAS DID NOT ARREST PLAINTIFF; HIS ONLY ROLE IN PLAINTIFF'S ARREST WAS ADMINISTRATIVE

57. On July 27, 2008, Lt. Sahnas was the watch commander in the 013th district police station. (Interrogatory Responses of Lt. Ken Sahnas (hereinafter "Sahnas Rog. Resp.") nos. 3, 9, 10 attached hereto as Ex. G; Excerpts from the deposition of Ken Sahnas (hereinafter "Sahnas Dep."), 5:4 – 8:13, attached hereto as Ex. H).

58. As part of his administrative responsibilities as the watch commander in the 013th district, Lt. Sahnas executed the initial approval of probable cause portion of Plaintiff's arrest report. (Ex. G, Sahnas Rog. Resp. nos. 3, 9, 10; Ex. H, Sahnas Dep. 5:4 – 8:13, 9:14-23, 17:9-23, 54:9-19).

59. In addition, Lt. Sahnas wrote comments in the watch commander comment section of the arrest report to document that a parole violation warrant was issued against Plaintiff, and, upon information and belief, populated the felony review portion of the arrest report. (Ex. G, Sahnas Rog. Resp. no. 9).

60. The initial approval of probable cause and the watch commander comments are ministerial duties performed by a supervisor upon review of an arrest report and as part of the responsibilities of a watch commander. (Ex. G, Sahnas Rog. Resp. nos. 3, 9, 10; Ex. H, Sahnas Dep. 5:4 – 8:13, 9:14-23, 17:9-23, 54:9-19).

61. Lt. Sahnas did not arrest the Plaintiff, did not witness Plaintiff being arrested, and did not interact with Plaintiff at any point. (Ex. G, Sahnas Rog. Resp. no. 3, 9, 10; Ex. H, Sahnas Dep. 8:14-16, 54:9-19).

## LT. DONNA DOWD DID NOT ARREST PLAINTIFF; HER ONLY ROLE IN PLAINTIFF'S ARREST WAS ADMINISTRATIVE

62. On July 27, 2008, Lt. Dowd was the acting watch commander in the Fourteenth District police station, located at 2150 N. California, Chicago, Illinois 60647. Lt. Dowd worked the first watch and her shift began at approximately 10:00 p.m. on July 27, 2008, and ended at approximately 6:00 a.m. on July 28, 2008. (Affidavit of Donna Dowd (hereinafter "Dowd Aff.") ¶¶ 1-2, attached hereto as Ex. I).

63. Lt. Dowd did not arrest Plaintiff Javier Santiago, did not witness him being arrested, and did not interact with Plaintiff at any point. (Ex. I, Dowd Aff. ¶ 3).

64. Lt. Dowd did not generate any reports in relation to the arrest of the Plaintiff Javier Santiago. (Ex. I, Dowd Aff. ¶ 4).

65. Lt. Dowd's only part in Plaintiff's arrest was to review the arrest report and affix her electronic signature on page five (5) adjacent to "Final Approval of Charges" portion of the report. (Ex. I, Dowd Aff. ¶ 5).

66. Lt. Dowd's electronic signature appears on page five (5) of Plaintiff's arrest report adjacent to "Final Approval of Charges" because, as part of her administrative responsibilities as the acting watch commander on July 27-28, 2008, she must review completed arrest reports submitted and execute the final approval of charges portion. (Ex. I, Dowd Aff. ¶¶ 5-6, ex. A to Dowd Aff.).

67. The "final approval" executed by Lt. Dowd is a ministerial duty performed by the watch commander upon review of a completed arrest report. The approval signifies that the report submitted by the arresting officers sets forth sufficient information to satisfy the elements for the offense(s) listed. (Ex. I, Dowd Aff. ¶¶ 5-6, ex. A to Dowd Aff.).

68. Plaintiff does not have any complaints about anything that happened when he was held at the 14th district police station. (Ex. A, Santiago Dep. 184:8-23).

69. According to Santiago, he has no complaints about any female police officers, is not aware that he is suing a female police officer, and does not know who Donna Dowd is. (Ex. A, Santiago Dep. 184:8-23).

70. According to Santiago, no female police officers mistreated him in any way in relation to his arrest. (Ex. A, Santiago Dep. 184:8-23).

## PLAINTIFF'S CRIMINAL PROCEEDINGS

71. A preliminary hearing was held on August 4, 2008, where Officer Tews testified. (8/4/2008 Preliminary Hearing Transcript, attached hereto as Ex. J).

72. At the August 4, 2008, preliminary hearing, the judge found probable cause as to the UUW by felon and no FOID card (Counts 1 and 2) and transferred the matter to the Chief Judge for further proceedings. (Ex. J, p. 8).

73. Following the finding of probably cause, Assistant State's Attorney Kenneth Alpert non-suited the traffic charges for littering, having no driver's license, and operating an uninsured vehicle (counts 3, 4, and 5), and nolle prosequed the defacement charge (count 6). (Ex. J, pp. 8-9)

74. Subsequently, Santiago moved to quash his arrest and suppress evidence which was heard on March 11, 2009. (3/11/2009 Motion Hearing and Bench Trial Transcript, attached hereto as Ex. K).

75. At the March 11, 2009, hearing on Santiago's motion to quash arrest and suppress evidence, Officer Moussa was called to testify by Santiago's public defender. (Ex. K, pp. 3-41).

76. The judge denied Santiago's motion to quash and suppress evidence finding that the officers had probable cause to arrest Santiago and search his vehicle; subsequently, the Judge asked Santiago's public defender how he wanted to proceed. (Ex. K, p. 42-44).

77. Subsequently, Santiago conferred with his criminal defense attorney and elected to forego a jury trial and proceed to a bench trial on that day. (Ex. K, pp. 44-45).

78. The Court adopted the testimony taken at the motion (Officer Moussa's testimony) received two items of additional evidence: (1) Santiago's vehicle records showing he was the owner of the Jetta, and (2) a certified statement of conviction for Santiago under criminal case no. 00 CR 27834. (Ex. K pp. 44-46).

79. The Court heard argument from the State and Santiago's public defender and found that the State failed to demonstrate the knowledge element in terms of Santiago's guilt because the firearm was found underneath the loose center console and, therefore, the State had not met its burden of proof with regards to "knowing possession." (Ex. K, pp. 48-49).

80. Consequently, Santiago was found not guilty. (Ex. K, p. 49).

Dated: October 18, 2010

        Respectfully submitted,

        Sergeant Ronan,
        P.O. Michael Tews,
        P.O. G. Moussa,
        Ken Sahnas,
        D.M. Dowd,
        City of Chicago,
        Defendants

By: */s/ Christopher A. Wallace*
Christopher A. Wallace
Assistant Corporation Counsel
*Attorney for Defendants*

City of Chicago Department of Law
30 N. LaSalle St.
Suite 900
Chicago, IL 60602
T: (312) 742-6408
F: (312) 744-6566
ARDC# 6278655

## **CERTIFICATE OF SERVICE**

  I, Christopher Wallace, certify that on Thursday, December 15, 2011, I caused a copy of Defendants' Joint Rule 56.1 Statement to be served upon all counsel of record by filing the same before the Court via the ECF system.

                 */s/ Christopher Wallace*
                  Christopher Wallace