IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| JAVIER SANTIAGO,<br><br>               Plaintiff,<br><br>     v.<br><br>SERGEANT RONAN, P. O. MICHAEL<br>TEWS, P.O. G. MOUSSA, KEN<br>SAHNAS, P.O. NOEL LIBOY, P.O.<br>M.K. DROZD, P.O. A.A.<br>COLINDRES, P.O. T.A. SURMA,<br>D.M. DOWD and the CITY OF<br>CHICAGO,<br><br>               Defendants. | Case No. 10 C 4691<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, the motion is granted.

## I.  BACKGROUND

On July 28, 2008, a man ("the Informant") walked into Chicago's 13th District police station and told Sgt. Patricia Maher ("Maher") that he had been doing some type of unspecified work on an apartment and that Plaintiff Javier Santiago ("Santiago") had a gun and had threatened to kill him.  Maher, who was not named as a defendant in this case, testified she had never met the Informant before that day and, at least at that time, knew nothing about him. She did not remember if she got the Informant's name, address or phone number or ran a warrant check on him.  The Informant asked to

remain anonymous, and Maher "respected that." Maher Dep. 21, ECF 23-1, PageID No. 108. It appears from the record Maher eventually learned the Informant's name, but Defendants, citing the Informant's privilege, have not released it and the Informant's name is not part of the record.

Maher testified the Informant clearly knew Santiago, knew Santiago's nickname was "Bear," accurately described Santiago's car as a Jetta make, accurately described part of the Jetta's license plate number, and led police to the general area where the Jetta was parked. Maher had never worked with the Informant before, but found him credible in part because he had presented himself to a police station instead of making an anonymous phone call. The Informant expressed his concern "in a manner where he appeared to be genuinely concerned and fearful for his safety." *Id*. 24, ECF 23-1, PageID No. 109. Using a state prison web site, Maher showed the Informant a photograph of Santiago; the Informant confirmed the man in the photograph was the man who had threatened him.

Maher asked a dispatcher to have a tactical unit police officer on the street call her, and Defendant Sergeant Ronan ("Ronan") responded to this request. The two sergeants spoke on the phone (Ronan used his cell phone rather than police radio) and Ronan verified the Jetta was where the Informant said it would be. Ronan set up surveillance of the Jetta. The Informant remained at

the police station for approximately an hour and a half, talking on the Informant's own cell phone with someone who was in close proximity to Santiago. That person told the Informant that Santiago was showering in a nearby apartment. Maher never learned the identity of the person with whom the Informant was speaking.

While Ronan watched the car, he was also in communication with two other Chicago police officers, Defendants Michael Tews ("Tews") and G. Moussa ("Moussa"). Those officers looked up Santiago's information in police databases and learned he did not have a license to drive. They also learned he was on parole for armed robbery and that police had urged officers to be cautious of Santiago due to his gang involvement and criminal history.

When Santiago left the nearby apartment, the person with whom the Informant was talking was able to relay that information as well as Santiago's clothing description to the Informant. The Informant relayed it to Maher, who relayed it to Ronan.

Maher testified she was not sure of the exact information she gave to Ronan regarding the location of the gun. "I believe I relayed that the last time the [Informant] saw Mr. Santiago with the gun, it was in or around the Jetta, but I'm not – as far as the specifics of what I said I can't recall." Maher Dep. 55, ECF 23-1, PageID 115. Maher also testified that the Informant may have been threatened by Santiago inside an apartment (as opposed to on the street), and she did not recall if the Informant explained how the

- 3 -

gun got from inside to the Jetta. *Id.* At another point, Maher testified she told Ronan she didn't know where the gun was. *Id*. at 46, ECF 23-1, PageID 113.

Out on the street, Ronan observed Santiago get into the Jetta and then discard the wrapper of a cigarette pack onto the street. Santiago admits he littered. Ronan relayed the littering information to Tews and Moussa. He also advised the officers that Santiago was driving away. Tews and Moussa pulled Santiago over and arrested him for littering and driving without a valid license. Santiago was handcuffed and placed in a police car. Tews then searched the car. While searching in the back seat area, he noted the base of the console between the front driver's seat and the front passenger seat was loose and not bolted down. Tews lifted the console and found a chrome revolver underneath the console and underneath the carpeting of the car.

Tews testified he searched the car as a search incident to arrest; Officer Moussa testified Tews searched the car because it was about to be impounded.

Gun charges against Santiago were eventually dismissed because the state court judge ruled prosecutors had not satisfied the knowledge component of the charge of "knowing possession" of a handgun.

Plaintiff sued numerous officers under numerous theories, but subsequently dismissed all Defendants but Ronan, Tews and Moussa.

- 4 -

He alleges Constitutional violations of false arrest, unlawful search of his person, unlawful search of his car and conspiracy under 42 U.S.C. § 1983.

## II.  **LEGAL STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A fact presents a genuine issue if it is one on which a reasonable fact finder could find for the nonmoving party.  *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006) (internal citations and punctuation omitted).

## III.  **ANALYSIS**

### A.  **False Arrest and Unlawful Search of Person**

Plaintiff concedes that Sgt. Ronan observed Plaintiff throw a cellophane wrapper out of his car window, and that Sgt. Ronan relayed this information to the arresting officers, Tews and Moussa, before they pulled him over.  Plaintiff additionally admits he did throw the wrapper out of his car window before driving off. Plaintiff admits that Officer Tews testified that before he pulled Plaintiff over, he used his in-car computer to view Plaintiff's picture and learned that Plaintiff had no valid driver's license, that he was on parole for armed robbery and had a safety/caution alert associated with him due to his gang and criminal history.

- 5 -

Although Plaintiff hedges as to whether Tews *actually* did this (as opposed to just testifying that he did), Local Rule 56.1 requires that any denial point to evidence in the record establishing a question of material fact, and Plaintiff fails to do this. By not citing any contradictory evidence, Plaintiff by default admits that Officer Tews knew this information before pulling Plaintiff over.

These admissions require summary judgment for all Defendants on the false arrest and unlawful search of person charges. They establish that police had probable cause to stop and arrest Plaintiff for either the littering charge or the charge of driving without a license. Ronan had witnessed the crime of littering and relayed this to Tews and Moussa, and Tews and Moussa had witnessed the crime of driving without a license. Probable cause is an absolute bar to a Section 1983 claim for false arrest. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

Plaintiff makes much of the fact that the Informant's information (about Plaintiff having a gun) was not independently corroborated, but for the purposes of false arrest, this is irrelevant in this set of circumstances. The probable cause for littering and driving without a license gave police had a basis, independent of the Informant's allegations, to arrest Plaintiff. Whether the arrest for littering and driving without a license was a pretext is irrelevant to whether it was Constitutional. *Whren v. United States*, 517 U.S. 806, 812 (1996) (ruling an officer's motive

does not invalidate objectively justifiable behavior under the Fourth Amendment). Once the arrest was made, the search of Plaintiff subsequent to that arrest was also Constitutional. *United States v. Robinson*, 414 U.S. 218, 221, 236 (1973).

### B.  The Defendants are Entitled to Qualified Immunity for Their Search of the Automobile

The warrantless search of an arrestee's car after a Constitutional arrest is not automatically permissible. *See, generally, Arizona v. Gant*, 556 U.S. 332 (2009). It is permissible to search, incident to arrest, the area within an arrestee's immediate control to prevent him from accessing a weapon or destroying evidence. *Id.* at 335. Here, however, Defendants concede that Plaintiff was secure in a squad car when the vehicle was searched, so under *Gant*, neither of those warrant exceptions apply.

A search of a car is also permissible if there is reason to believe that evidence of the offense of the arrest might be found in the vehicle. *Id.* But, assuming the arrest to be for the offenses of littering and driving without a license, just as in *Gant*, no further evidence of the crimes could be gained by searching the car. After all, the litter was already outside the car, and it is not reasonable to assume Plaintiff would keep a signed confession in his car that he had no license and should not be driving. Therefore, if the search of the car was

Constitutional, it would have to be justified by some other legal precept.

Defendants suggest the search was an inventory search performed as part of the car's impounding. *See generally*, *Colorado v. Bertine*, 479 U.S. 367 (1987). Plaintiff argues Defendants submitted insufficient evidence of what the city's policy is and how it is administered. Despite Defendants' protestations, such information is, in fact, part of the analysis of the Constitutionality of an inventory search. *United States v. Cartwright*, 630 F.3d 610, 614-615 (policy must be sufficiently standardized to be Constitutional). Neither party submitted evidence in their statements of fact of any written policy, although officers testified there is a policy.

Defendants finally argue that the Informant's communication to police about being threatened with a gun gave officers a reasonable basis to search the car under the automobile exception, even though Plaintiff arrived at the car after some significant period of time had expired between the threat to the Informant and Santiago's arrival at the car. Maher's equivocal testimony raises a question of fact as to whether police reasonably believed the gun was ever in the car. There is also a legal question as to whether it was still reasonable, after this lapse of time (at least an hour and a half, gauging from the Informant's time in the station) between the

initial report and Santiago's sighting to believe the gun the Informant talked about was still in the car.

Plaintiff also argues that Defendants did not sufficiently test the Informant's reliability, and so any beliefs based on the Informant's tales are not reasonable.

These are, on both sides, colorable arguments. Thus, the question of the Constitutionality of the search of the car is a closer question than the question of arrest and search of Plaintiff's person. But the Court need not reach the question of the Constitutionality of the search of the car because, assuming, *arguendo* that none of the above avenues justified the search of the car, the police are still entitled to qualified immunity in this instance for their search of the car.

Two questions are pertinent to the defense of qualified immunity: whether the alleged facts show that the state actor violated a Constitutional right, and whether that right was clearly established at the time of the alleged violation. *Brown v. City of Fort Wayne*, 752 F.Supp.2d 925, 940 (N.D. Ind. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Here, the Court has assumed the first factor in favor of Plaintiff. But Defendants argue quite persuasively that the law at the time of the arrest, which occurred on July 27, 2008, allowed police in these circumstances to search a vehicle incident to an arrest under *New York v. Belton*, 453 U.S. 454 (1981). At the time

of the arrest, *Belton* was still good law, not yet overruled by *Gant*, which the Supreme Court handed down in 2009. The Court in *Belton* announced a bright-line rule that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment." *Id*. at 460.

The "container" in the *Belton* case was a jacket in the back seat. Although the suspects in *Belton* were not handcuffed, they were some distance away from the car and separated from each other. As the *Gant* decision noted, some courts interpreted this distance from any possible weapons and evidence in the car, and *Belton*'s stated emphasis on the need for a bright-line rule, to mean that car searches incident to arrest were proper "even when . . . the handcuffed arrestee ha[d] already left the scene." *Gant* at 342. Indeed, Justice Scalia remarked that cases allowing searches of cars where the arrestee was handcuffed and in a squad car were "legion" in number. *Thornton v. United States*, 541 U.S. 615, 628 (2004). The Seventh Circuit seemed to embrace this bright-line distinction. *United States v. Douglas*, 55 Fed. Appx. 769, 770 n.1 (2003) (noting that, independent of a reliable informant's tip, a car search incident to a pretextual speeding arrest provided a *Belton* basis for a search that found a kilogram of cocaine under

- 10 -

the back seat); *see also Grover v. Boyd*, No. 98-3216, 1999 U.S. App. LEXIS 11282 at *7 (7th Cir. 1999) (recounting numerous Seventh Circuit applications of *Belton*, including *United States v. Willis*, where the car was searched shortly after suspects were secured. *United States v. Willis*, 37 F.3d 313, 318 (7th 1984)).

Plaintiff argues, using *Gant*, that it should have been clear to police their search was unconstitutional. But *Gant* came after this arrest. The Court can hardly say that, if *Belton*'s unconstitutionality was unclear to the Supreme Court and the Seventh Circuit, it should have been clear to officers of the Chicago Police Department. The officers are entitled to qualified immunity because at the time of the arrest, it is uncontested that *Belton* was still good law.

### C. Plaintiff Offers No Evidence of a Conspiracy

To establish a *prima facie* case for conspiracy under § 1983, a Plaintiff must show (1) an express or implied agreement among Defendants to deprive Plaintiff of a Constitutional right and (2) actual deprivations in the form of overt acts in furtherance of that agreement. *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

Even if the Court assumes, *arguendo*, there was an actual deprivation here in the form of the search of the car, Plaintiff has presented no evidence that Defendants agreed to search Plaintiff's car before Tews actually searched it. There was an

- 11 -

implicit agreement to keep Plaintiff under surveillance and to arrest him for the littering, but Plaintiff has presented no testimony in his Local Rule 56.1 Statement about how the decision to search the car was made, or whether it was simply Officer Tews' individual decision to do so. With no proof of an agreement, there can be no conspiracy.

## IV.   CONCLUSION

Because no questions of material fact exist as to whether the officers had probable cause to arrest and search Plaintiff's person, the claims of false arrest and unlawful search of his person fail. Because no questions of material fact exist as to an agreement surrounding the search of the car, the conspiracy claim fails. There is also no question of material fact as to whether the search of the car, at the time it was made, was widely perceived as permissible under *Belton*. It was. Therefore, the officers were reasonable in their belief that they could search the car and are entitled to qualified immunity.

The Court grants summary judgment in favor of all Defendants. **IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 7/12/2012

- 12 -